The next case is agenda number 6, 1-2-2-3-2-5, People v. Harvey. Ellen, are you prepared to start? You may do so. Thank you. May it please the Court? Good morning. On behalf of the Office of the State Appellate Defender, my name is Mariah Shaver and I represent Shane Harvey. When a citizen knowingly takes someone else's property without authority, the State calls that a theft and seeks a penalty. But where the State is taking, knowingly takes money from an indigent defendant without authority, it wants to call that a clerical error. The State takes this position in an attempt to create a barrier to relief from the crushing burden unauthorized financial obligations place on defendants. In order to pay the unauthorized assessments that the Appellate Court left in place in this case, Mr. Harvey would have had to work 93 hours at a minimum wage job, and that's before taxes. In 2012, this Court noted in People v. Gutierrez that, as a policy matter, it is more efficient for the Appellate Court to simply take care of erroneously imposed fees while the case is on review than to have a defendant initiate separate proceedings to have them vacated. This Court also noted that it did not believe a clerk's action in imposing an illegal fee should further burden the defendant. Today, we ask this Court to uphold these principles and find that when unauthorized fines and fees are discovered for the first time on appeal, that they can be remedied as second-pronged plain error. The plain error rule presupposes human error. It exists because this Court understands that courts and attorneys make mistakes, and that mistakes affecting the integrity of the judicial process should be corrected. The State is trying to breed a non-existent limitation against correcting unauthorized fines and fees into the rule. This Court has interpreted the plain error rule to allow for the correction of financial assessments, and it should continue to do so. As this Court discussed in Lewis, the foundation of second-pronged plain error review is fundamental fairness and the integrity of the judicial system. This Court has made it clear that failure to follow procedure is of concern in second-pronged plain error review in a sentencing context. And as recently as last year, this Court reiterated that focus in People v. Ford, where it described Lewis as holding that plain error review is appropriate to consider the imposition of a fine that is in contravention of the statute, because it implicates a defendant's right to a fair sentencing hearing. This Court has also found that failure to follow statutory requirements when assessing a public defender fee is not the type of error that's subject to procedural default, and that was in People v. Love. In this line of cases, the appellate court, in line with these cases, the appellate court recently concluded in People v. Mullin that the assessment of unauthorized fees is arbitrary, and it is more than a simple mistake in setting a fine. Mullin correctly found that these types of errors are akin to the error that this Court addressed in Lewis, and should be addressed as plain error. Statutes regarding fines and fees dictate when a specific assessment can be imposed. And when assessments are applied outside of those statutory requirements, for any reason, whether that be a clerical mistake or some other flaw, leaving a defendant liable to pay the government money that it has no right to ask of him, runs afoul of these principles of fundamental fairness that the plain error rule is based upon. Where an error is caught, it should be corrected. It would clearly harm the integrity of the system to say to a defendant, we know that there has been a systemic failure, and a financial burden has been improperly placed upon you. And we know all the ramifications this can have for you and for your family. And we do have the power to correct this error, but we're going to choose not to. Leaving those types of unauthorized assessments in place rewards the State for failing to comply with the law and for making careless mistakes. Now in this case, counsel, the DNA fee, wasn't that recognized as being erroneous, and the clerk has corrected that entry? Yes, Your Honor. Yes. And similarly with the Crimestoppers, that was taken care of by his pretrial in custody. Yes, Your Honor. So they're both moot, is that correct? Yes, Your Honor. And you're urging that we reach this under exception to the... Under exception to the mootness doctrine. Your Honor, though both of those assessments are moot as it relates to Mr. Harvey, because the unauthorized assessments of fines and fees in general, the Crimestoppers being a fine, the DNA being a fee, it's such a pervasive problem, as the appellate court noted in People v. Griffin. And other courts, other cases that have cited to Griffin have also joined in that concern. The public interest exception to the mootness doctrine does apply in both instances. We do need guidance from this court on how best to resolve these issues. There is a split in the decision, even within the first district appellate court, there's a split on how these cases should be handled, how these matters should be resolved. So we do need guidance from this court. And for some of the same public policy reasons we've been discussing, this court should address these issues under the public policy exception to the mootness doctrine. It does impact the fairness and integrity of the court system to allow unauthorized fines and fees to be assessed. When there's no basis for an assessment, the assessment is arbitrary. Counsel, with respect to the DNA fee, the clerk corrected it, right? Your Honor, yes. At this point, the DNA fee does not apply to Mr. Harvey. So it was a mistake that was corrected. And what future guidance could be offered about correcting mistakes? Well, Your Honor, I think we need to look at it as a bigger picture of the entire system when other DNA fees are assessed. In this case, yes, the Assistant Attorney General was able to resolve that with the clerk. But I don't think it's a stretch to say that the Assistant Attorney General or Attorney General's office is not going to, in every single case that is appealed, review the financial assessment, contact the clerk, and try to have some of these issues resolved. I think this case actually provides an example of why that's not going to be a resolution for all fines and fees issues, the share of fee issue in this case. It is disputed. That's not the kind of thing where someone's going to just be able to call the clerk and say, can you please adjust this? Can you please amend it? Can you please vacate it? So while, yes, in this case, the Attorney General was able to resolve Mr. Harvey's concern with the DNA fee, there are a lot of reasons that contacting the clerk is not the right solution. For example, if when I had seen that fee initially when I was reviewing the record in this case, if I had picked up the phone and contacted the clerk, the State's Attorney Appellate Prosecutor's office may have even considered that to have been unethical, and I'm not suggesting that Mr. Schenger was. We obviously wanted that fee to be vacated. But the State's Attorney Appellate Prosecutor at the appellate court level did disagree. They disputed that that fee should be vacated. So there are a couple of reasons that contacting the clerk's office to correct an improper assessment doesn't work. One, it denies opposing counsel or the opposing party the opportunity to dispute whether or not that that's correct. Also, there can be mistakes made. Ms. Schaefer, on that line, though, if we do decide to look at the merits of the matter, how do we know when some fee is erroneous or some amount is plain error? What is the standard for our review of a plain error on fees? What would we do? To make sure I'm understanding your question, is Your Honor asking if... How does the court determine whether or not something is, if a fee amounts to plain error? What is the standard of review for us, for looking at that? How do we look at whether it's plain error? Your Honor, in order to determine if something's plain error, we look back to the plain error rule. And we're looking at does it affect the fundamental fairness and integrity of the judicial system? And as this court discussed in Lewis and noted in Gutierrez and in the citation in Fort describing Lewis, when an unauthorized assessment is imposed in contravention of the statute, it implicates the defendant's right to a fair sentencing hearing. When we're looking at these assessments that don't have any basis in the statute, they are arbitrary, and expecting a defendant or leaving those in place certainly impacts the integrity of the system. It's fundamentally unfair to expect a defendant to pay money that the government has no right to ask it for. My concern is with regard to the ones that are moot. Isn't it going to be like the court saying to the circuit, don't make mistakes? Well, of course they don't. They're not making them intentionally. They just make people make mistakes. So how does this advance the, you know, how would this case prevent that from happening in the future? Your Honor, I think the better question to look at is what's the incentive for the government or the clerk to follow the law if we're not going to do anything when they don't follow the law? And again, I agree, Your Honor, these are mistakes. But I'm talking about in the scenario where they've been corrected. You're not asking for any kind of affirmative relief, are you? Regarding those two assessments, Your Honor, at this point our position is that under the public interest exceptions to the mootness doctrine, we're asking this court to provide guidance as to how these errors should be properly assessed in the future. And our position is that they should be assessed at the appellate court level. That is the most efficient place to resolve these issues when they are noticed for the first time on appeal. Can I ask two questions? First of all, the sheriff's fee, we've talked about the other two fees that have been clearly were cleared up. How about the sheriff's fee? Is there some issue about when the math is done correctly, the amount owed would be less? Yes, Your Honor. The way we are presenting the math. Excuse me. If it's done correctly, the amount would be more than what was charged, right? Well, Your Honor. So it's to his benefit, the mistake that was made. Your Honor, I don't believe it is. If we are applying the $10 service fee from the state statute and the $5 return fee to the subpoenas that were calculated, that number is less than the $515 that was imposed by the court. So I do believe that there would be relief available to my client. I understand in the calculation, the Attorney General points this out, that there was one of the subpoenas that appeared to not have been calculated into the clerk's total coming up with that $515. But the total amount that would be assessed if we are applying to all of the subpoenas, the $10 and $5 that appear in the state statute, then there would be a lower amount that Mr. Harvey would owe. So he would still obtain relief from that. He would have a lower amount he would have to pay. So going back to Justice Garland's question, when there's a dispute, and some of this may be a legal interpretation of the statute, but here may be some factual ideas, is the appellate court the place to resolve those kind of disputes? Yes, Your Honor, it is. It's the most efficient place to do this. Why? Why? How does the appellate court develop a record, factual record? It doesn't sound like what appellate courts do. Your Honor, the reason it's more efficient, as we do in many cases, when OSA receives a record, we request from the clerk a copy of their sheet of what the clerk's record is of all the fines and fees that have been assessed against our client. We then review those for errors such as the errors here. Because the case was already on appeal, the appellate court already has jurisdiction, the record's already there, the parties are already reviewing the record, it's much more efficient to just resolve those issues before the appellate court instead of other possible options are OSA would then have to perhaps resubstantive issues and send our client to pro se, initiate an action in some other court in addition to whatever is already happening in the appellate court. That might be, depending on what this court decides, a pro se mandamus action in this court or some sort of pro se motion in the trial court. That would be in addition to the appeal that's already taking place. It is more efficient because those issues have been noted by counsel. An attorney could be briefing those issues or it could be resolved in an agreed motion for summary remand if there aren't other issues. It's much more efficient to keep one proceeding instead of initiating additional proceedings and this also would probably involve a pro se defendant, which always makes things a little more complicated. It's also putting an undue burden on the defendant. It's not the defendant's fault that there's been this mistake, that this unauthorized assessment has been imposed. So we just finished this idea about the appellate court doing fact finding. How does the appellate court then generate a record? Usually when we talk about the record, we're talking about a trial court record. Here we're talking about a debate, documents on both sides, arguments on both sides as to what the numbers mean. What happens to those documents? How does the court do that? Governor, what we have been doing, and as far as I know it's not been a problem, when we obtain documents from the county clerk's office, we supplement them to the record, we append them to our briefs, and then we refer to those. I have not run into myself an occasion where the state was objecting to us supplementing those documents. They are certified copies of things. There's no reason to think that they are not what they purport to be, and I believe that that does provide an adequate record for the appellate court to review that the numbers are what the county clerk believes that the client owes as part of their sentence. Does that answer your question, Your Honor? Yes, thank you. The burden of the system still... Are you proposing, or is there a difference between how the appellate courts or any courts would handle fees as opposed to fines? Your Honor, I don't think there should be a distinction made with that. I think that's a distinction without a difference. They are both part of what my client has to pay in order to successfully complete his sentence. If he doesn't pay any of his financial assessments, regardless if it's a fine or if it's a fee, it would be sent to collections. All of those consequences that can come from not paying them happen. If he's on probation, he can have a petition to revoke filed for failing to comply with his sentence. He could face imprisonment. If he doesn't pay and the county sends those to collections, there's the additional fees, the 30 percent, the 90 percent. There are other consequences for him if he does not pay his fines and fees. So I think because the consequences are the same, the burden to pay them are the same, that they should be treated as far as whether or not they are a plain error as the same type of problem. So some of it is plain error committed by the clerk in assessing the fee and some by the court in including it in the judgment? Or are the fees incorporated into the judgment by virtue of the court's act? Yes, Your Honor, I think that the fees are part of the sentence. And so we should treat plain error the same. And I understand that there's a jurisdictional difference there, and I believe Your Honor is asking about going back to Castleberry and void versus voidable and those things. But because the end result is the same, that my client still has that burden to pay, I believe this court should treat plain error as the same as applied to whether or not it was imposed by a clerk or by the court. The burden on my client is the same. He would still have the same responsibility to pay, regardless of whether it's a fee or a fine. Getting back to the DNA fee, when you're asking us to take that issue up, even though it's moved, we've decided that the second DNA fee shouldn't be assessed based on people versus Marshall. You're asking us for the procedure how to handle improperly assessed fees. Yes, Your Honor, we are suggesting that this court should direct the appellate courts to just allow us to resolve these issues while the case is already on appeal, be that as an additional issue raised in a brief that raises substantive issues. It could be in an agreed motion if there is something that is a very straightforward issue. For example, clerk-imposed fines, there's no jurisdiction for that. There's almost always a concession by the state. We could resolve those things by agreed motion. Or if there are issues like the sheriff's fee here that are a little more complicated and do require some argument, to allow us to brief those issues as we would any other issue with the appellate court, rather than initiating some separate pro se proceeding, either with this court or the trial court. Because it is more efficient to keep the issue resolved while it's already on appeal, we think that that is a solution this court should come up with. And if there are no further questions, we would ask this court to find that, in addition to unauthorized fines, unauthorized fees can be reviewed as second prompt plain error. Thank you. Thank you. Good morning, Your Honor's counsel. May it please the court, I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. Mr. Schneider, before you get into your argument in this case, and I understand there's mootness questions, I understand that you have things to talk about. The last thing that was discussed with opposing counsel, the whole idea of the appellate court being the best place to handle this, and the specific question with respect to, you know, the Clerk's Act and whatnot. Do you have any dispute with that? Do you likewise feel the appellate court is the most logical place to handle fees and fine issues? I do not, Your Honor. And I think particularly with respect to the DNA analysis fee that's been challenged here. The defendant has a moot challenge to the clerk's erroneous reference to a DNA analysis fee that was never imposed by the circuit court. And that erroneous reference appears in an extra record, a counter receivable document, which has never been entered into the court record. It is unclear what the basis would be for that to create some sort of independent legal obligation on the defendant. And so it's unclear how... Are you saying if the clerk is carrying it as a counts receivable and the defendant is on probation, he won't have to pay that to get off probation? Our position is that if there's an error in the bill that he gets, that error is a clerical error. It is not the clerk creating some independent legal obligation in addition to the judgment. So in this case, for example... But you didn't answer my question. I'm sorry. You didn't answer my question. Will he get off probation if that's still shown as a counts receivable? He will not, but the problem is not that the clerk has created that obligation. The problem is there's a clerical error. So the question is, how do we correct that error? There's an amount that's on his bill that shouldn't be there. It's not there because of an order of the court. It's there because of a clerical error in the clerk's office. How do we correct that kind of error? And the question is, should we correct that kind of extravagant clerical error in the appellate court raised for the first instance there? Or is there some other mechanism that would be more appropriate? And this is actually the issue that was raised in people that Yvara argued in January. In this case, the court had a fines and fees order. I believe it's the appendix page 43. And the court listed all the fines and fees that it was imposing in this case. The order is actually a checklist. It has a line for each of the available fines and fees. And the court put a check next to each fine or fee it was imposing. There is a line for the DNA analysis fee. The court did not check that line. The court did not impose a DNA analysis fee. When defendant requested the clerk's extra record accounts receivable document, he saw an erroneous reference to that non-existent DNA analysis fee. So the question is, well, how do we correct that error? And this case is a perfect illustration of how that sort of extra record clerical error should be corrected. When the extra record clerical error was brought to the clerk's attention, the court said, well, that's not right. We don't put fees or fines into the system that the court didn't order. And they removed it. And then we're done. Well, of course, the argument is made that that was with the graciousness of the clerk's office upon a phone call from the state. I think the suggestion is that perhaps that would not have happened quite as smoothly had the defense made that phone call. And I'm unfamiliar of any circumstance where we've presumed that government officials will not carry out their duties in an even-handed and good-faith manner. It seems to be a presumption that the court will respond to the state and respond differently to the defense bar. I'm not familiar with the basis for that. But even if that were the case, let's say that the particular clerical employee that defense counsel contacts says, you know, I'm not comfortable with doing this without an order of the court. The defense counsel is perfectly free to contact the state's attorney, who has an independent duty to see justice done, in which case the state's attorney is in court every day. I'm the ASA assigned to Room 102. And they may not like to do it. I appreciate it. They won't want to. I'm smiling because we're sort of spreading the obligation all around now. There's the court's obligation. There's the clerk's office. Is it the defense lawyer's obligation? Now we're saying the state's attorney needs to be part of this, ensuring that the correct numbers are being added to this order. The court has the opportunity in barra to clarify that it is the clerk's obligation to keep its records in order. And if a record is not correct, that the parties should bring it to their attention. That's all we're suggesting is here goes a clerical lawyer who was brought to the clerk's attention and the court corrected him. We understand there's a mootness issue here. What happens, keeping with Justice Tice's question, what happens if nothing happens? What if the clerk isn't willing? Is it mandamus then? Honestly, it could be a motion to correct clerical error in the trial court. It could also be a mandamus. How does the Clerk's Act implicate what we're talking about here? How does the Clerk's Act? I would submit that the Clerk's Act doesn't implicate. Well, so this case, at least in the PLA, presents a question of how does plain error apply to the assessment of fines and fees? The moot challenge to the clerk's erroneous reference to a nonexistent fee does not present a question of how DNA applies to an erroneously imposed fee, because that fee was never imposed. I know we're talking about this case and we're talking about generalities. So with respect to the generalities, is the clerk's assessment of fees part of the record? In general, it's not clear when the clerk can assess a fee. Now, there's some language in the appellate court saying the clerk has the authority to. If a clerk erroneously assesses a fee, is it a part of the trial court record? No. What is it? It is the question is difficult, because when you say when the clerk erroneously assesses a fee, what we're talking about is the clerk having a record that shows a fee that was not assessed by the court, and we're saying that that clerical error is itself an assessment. And I would submit that is not an accurate characterization of what's happening. In the same way that if the court ordered a $250 public defender fee after having a statutorily compliant hearing and the defendant's ability to pay, and it enters an order saying a $250 public defender fee is ordered, and then when the clerk takes that back to their office and enters it into their system, they accidentally hit an extra zero or omit the zero, $25, $2,500. They have not created a new legal obligation independent of the court's order. They have not overruled the court and reduced the fee by tenfold, nor if they've made a mistake the other way have they overruled the court's order and increased the assessment tenfold. They just made a clerical error. Well, let's go to what opposing counsel indicated, that the way this has been handled in the past is those assessments have been attached, goes to the appellate court. Typically, the state would say, you're right, that one's wrong. Right. Is not that – let's forget everything else for a minute. Is that not the most – isn't judicial economy served in that instance when the rest of the appeal is being handled for the appellate court to say, okay, you agree, yes, that's wrong, we're going to vacate that fee? No. And the reason is part of the problem is that it's a situation of if all you have is a hammer, everything looks like a nail. Appellate attorneys, if they see a problem, we sort of assume it must be an appellate issue that is amenable to appellate review. We assume, rightly or wrongly, we often assume, well, there must be jurisdiction over this thing the clerk did. We figure, well, it's in a document, so it must be legally binding, must have independent legal effect. So then we'll treat it as though it were in order. But as the court noted, and as the case law certainly bears out, the state generally concedes when there's a clerical error, when we have these clerk-imposed fines and fees, in other words, an erroneous reference to a nonexistent fine or fee, that that's wrong and that should be fixed. Now, it's been fixed by vacating that clerical error. But if the parties agree that's wrong and the clerk is directed by this court in this case that it is limited to the assessments imposed by the court, then it is really a ministerial matter. If the courts are in agreement, they can simply contact the clerk's office, SAC, OSAD, the state's attorney, whoever it is that gets this brought to their attention can contact the clerk's office, point this out, as I did. In this case, I called the clerk's office. I said, do you impose fines or fees? And Adams County does a marvelous job. I said, do you impose fines or fees that are not, or would you put fines or fees that were not ordered by the court into your system? They said, no. I said, oh, well, in this case, there is a... Well, this is sob now. We're going to just have you handle all of it. It's too much. That's great. This is great news. I was being modest. This was not, this didn't require any particular legal acumen. I didn't do anything particularly impressive in this case. I just noticed exactly as counsel did. I noticed that there was a discrepancy between the clerk's record. Don't sell yourself short. This is very impressive. Let me ask you a practical question. I'm going to ask a opposing counsel a question. Doesn't anybody look at these things before they get to the appellate court? Doesn't trial counsel or the state's attorney look at these documents and look at the fines and fees and resolve at that point? Why isn't the first time that these things get noticed because when they get to the appellate court, neither it's you or OSAD that's looking at them? It appears that at least with respect to clerical errors, that is errors that are not part of the court record, that people aren't going to the clerk's office for some reason and double-checking to make sure that the orders were translated correctly in the trip from the courtroom to the clerk's office. For some reason, that's happening for the first time on appeal, and I honestly don't know why that's the case. Shouldn't that take place at the trial court level before it ever leaves the building? It should absolutely take place at the trial court level, and so should the review of the court's actual sentencing order. The entire purpose of the forfeiture rule is if we have errors that are apparent from the record, we should raise those in the trial court and give the trial court an opportunity to correct them. Does that record here show when the clerk's office entered all of these? That is the other problem with treating clerical errors in extra-record documents as appealable orders, is the dates on these printouts simply reflect the date that they were printed out. So if you request the document three months after sentencing, then you get a document dated three months after sentencing. The one that we got, which was corrected, is dated, I believe it's January 18th of this year, significantly after the sentence took place, and clearly significantly after these things were initially put into the support system. You just get the date it was printed out, which doesn't tell you anything. It's possible that had this been requested immediately upon the final notice of appeal, they could have caught it immediately and raised it then and never had to have briefed it in the first place. So the question, should this be dealt with in the appellate court? Well, we can deal with it before the briefing either begins. As soon as it's identified, someone can bring this to the clerk's attention and correct it. There's no need to go through the process of briefing it and then committing scarce appellate resources to deal with this sort of cut and dry, oh, we dropped a zero, we forgot to carry the one, the court didn't order this fine or that fee, and someone made a mistake. They hadn't had their coffee that morning. There's no reason this is something we should do in the appellate court and certainly not the Supreme Court. You've indicated that Adams County has a checklist for the judge to sign off. I think there are a number of counties that don't follow that, and the judge will simply say to the clerk, assess the fees that are appropriate in this case, and then they become part of the record to the clerk of the Courts Act. Are those part of the court's judgment then, if that's what's done? When the court orders all costs, we know the court can't order all fines because that's punishment and you can't delegate that, but the court can delegate the calculation of fees to the clerk, but we would submit that the sounder practice is once that delegation has taken place, that the court in some way ratified the clerk's subsequent calculation. But if that isn't done? If that isn't done, then we are left with a judgment that we need to, that is ambiguous from the face of the record, that we need to then interpret through the use of extrinsic evidence, which we do in some other cases in sentences and so on, where we say, well, we need to look at the minute orders or the docket to try and provide the context necessary to clarify an order. Are you asking us to declare that those fees that would be assessable, appropriately assessable in the case, are not assessed unless the judge actually checks them off or signs off? Is that what you're asking? We are not asking the court to do that. It may be that that would be the best practice, but we appreciate that there are 102 counties with different degrees of resources. We would suggest that if the court does delegate its authority to tabulate the various fees, that the clerk's entry of those specific fees then into its system in some way be incorporated into the record, so that the defendant has a way of discovering what those actually are. It doesn't seem to me the Clerks of the Courts Act does that. It says those fees that the clerk is to prepare them, that is part of the court's record. If not, tell me why that's not true. My understanding is that for something to be part of the court record, it needs to be entered into the court record in some way. These documents are internal electronic documents that only end up on a piece of paper when someone requests that they be printed out. If you file the record on appeal, there's no way to know what these fees are simply from the clerk's electronic record. That's why they're supplemented. It's actually unclear whether they can be supplemented as a part of the record. They've never been file stamped. Setting aside whether they've been entered by the court, they've never been file stamped or included in the record. If a defendant wanted to know what the court had ordered, he would not be able to tell that from the record unless there's some way of putting that piece of paper into the record. It could just be as simple as the court has said all costs and fees. The clerk then goes back to their office, uses in some cases software to tabulate specifically which of the myriad fees are applicable, and then prints that out, file stamps it, and puts it into the court file. Well, now we know. There's no confusion anymore. Of course, if we're on electronic filing, we're not going to have paper files where that's going to be. That's true, but then we would have an electronic file where it would be. If the Clerk of Courts Act did specifically make that part of the record, would your argument be different? If it specifically made it part of the record, my argument would not be different, but I would suggest that if it's specifically part of the record, then it should be included in the record on appeal, and it should be available as part of the record. And why would that not make all the difference in the world? Couldn't the appellate court then handle that issue along with other issues presented? Certainly. If it was a case where it was a matter of delegation, if the court had said all costs, which is not the case here. Here the court took it upon itself to specifically order specific fines and fees. But if the court had delegated its fee calculation to the clerk, then that would clarify this in those cases. Are we looking at legislation? You're saying sort of, you know, how do we fix this problem? Obviously a very important problem. What are you proposing? Well, I believe there's actually currently legislation working its way. Does it address this issue? I don't think so. Well, let's see. I don't have the bill number off the top of my head. But if I recall correctly, it establishes a series of schedules, and it sets just a lump assessment. So it would be if you commit this particular type of offense, there would be an assessment of $585. The breakdown directs the clerk how to direct portions of that total. But it would simply be one assessment in a case, which I think actually would probably clear up a lot of this. So we just know, well, was it a Schedule I or a Schedule VI offense? And the court would have ordered which of those was the case, and we'd be done. I turn very briefly to the question of plain error. This court has explained that second-pronged plain error is analogous to structural error. It's an error that undermines the integrity of the judicial process and denies the defendant a fair sentencing hearing. In other words, he didn't get his day in court. There are sort of two ways that can happen. One is you literally did not get your day in court. The court didn't have the hearing that was necessary. That's what happened in Lewis. A defendant was denied his opportunity to adversarially test evidence of the street value before the court imposed a street value fine. It's also the case in Lewis in People v. Love, where there wasn't the requisite statutory hearing and the ability to pay a public defender fee. The other possibility for not getting your day in court is that you had your day, but it wasn't a meaningful opportunity to be heard because then we get into structural error. The judge was biased. The jury was selected using racially discriminatory practices, that sort of thing. These sorts of run-of-the-mill errors in assessing a final fee do not raise that sort of challenge to the integrity of the judicial process. They simply reflect the fact that judges are human, and fallibility alone is not second-pronged plain error. The existence of the appellate court recognizes that judges make mistakes, but that doesn't mean that any mistake undermines public confidence in justice being anything other than, or being, an example would be in Clark, where the court said that convicting someone for an offense they were not charged for, and it was not a lesser-included offense, show the sort of ad hoc personal brand of justice that was inconsistent with an ordered justice system. And an erroneous final fee simply does not present that sort of challenge to the integrity of the judicial system. Unless there are any further questions, we'd ask that the court affirm the judgment of the appellate court. Thank you. Thank you. Rebuttal. Your Honor, I'd like to start by discussing the concept of contacting the clerk to resolve these issues directly. The court was touching on this. The problem with doing that is, yes, there may be times where the clerk is aware that, yes, that DNA fee should not have been assessed and will vacate it. But there may be times where either the clerk is not comfortable doing it without an order, as I believe Mr. Schneider referenced, and also there's no accountability for who's going to take care of this. There's no follow-up. And what happens if the clerk says no? What process is there for a defendant if the clerk says no? A phone call or a visit to the clerk's office in person doesn't create an order to appeal from. So what remedy is there for a defendant with these unauthorized assessments that he's still expected to pay to complete the sentence? Additionally, this puts extra steps on the defendant. It puts the burden on the defendant to take responsibility for making this correction. Another problem that exists as far as resolving these issues in the trial court, if we were talking about doing it by a motion, well, what motion is available? In People v. Coleman, the 4th District, it says that a motion for a non-croton order only corrects a calculation error, a mathematical error. It doesn't correct an improper assessment, something that involves some kind of analysis. Deciding if the DNA fee should have been assessed does require some level of analysis. Someone has to figure out, is this a qualifying offense? Does the person already have the sample in the database? It's not just a straightforward calculation. This is not just a clerical error. So according to the 4th District, a motion for a non-croton order would not be appropriate for a defendant to file to resolve those types of issues. People v. White in the 3rd District suggest otherwise. So there's a need for clarification as to how this should be handled. And again, our position is that it's most efficient to just resolve these issues in the appellate court while the case is already there. Do you think there should be an independent obligation on the trial counsel to look at this before it ever gets to the appellate court? Yeah, and I think we all agree that that would be the best outcome, is if the parties resolve these issues before the case is ever appealed. Nobody questions that. The problem is that that just doesn't always happen. Many members of the court have either practiced or presided over trial courts. These are very, very busy situations. And one of the cases that we've all been discussing talks about, it's understandable at these sentencing proceedings, we're talking about long prison terms, all kinds of other things that may be after testimony from witnesses. These are important proceedings that perhaps a priority reasonably isn't on are all of the clerk's fees properly assessed here. And of course, it is obviously best to avoid these things by doing it up front. The other part of the equation for that is the legislature has not acted on the recommendations by the task force regarding fines and fees and made this clear. Our fines and fees scheme is very complex. It's often misleading. Things are labeled as fees when they're really fines, et cetera. It's very complicated. That doesn't help make it easy for the people at the trial court to be able to resolve these issues efficiently there. And because it's just not happening, it shouldn't be the burden of the defendant when the system is failing. And again, even though these errors are not ideally noticed for the first time on appeal, because that is what is so frequently happening, the most efficient method is to just allow us to resolve them while the case is already on appeal. And I would just note in this court, in this case, because it came up a few moments ago, that during the sentencing hearing, the trial court did order that, and I don't remember verbatim, but the court did order that costs be assessed while explaining its ruling orally. There's no box marked on the sheet that says all costs, but the court did orally pronounce all costs, that Mr. Harvey was ordered to pay that. And I do think that matters because, again, we're not looking at something that is separate from the sentence. It is part of the sentence. Mr. Harvey has been ordered to pay it, and he must comply with that in order to complete the sentence. Regarding the issue of whether or not he's been afforded an adequate process, whether or not he had to stay in court, the state is trying to take away part of the process. So there is a sentencing hearing in which Mr. Harvey did take advantage of filing a motion to reconsider, or the hearing on that motion. Part of the process is that he gets to appeal the denial of that motion. And part of what you get to do on appeal are raise errors that rise to the level of plain error. Because the unauthorized assessments do harm the integrity of the judicial process, they do constitute second-pronged plain error, and he should be able to raise them. Because these unauthorized fees cause such undue hardship to real people, we've started a number of articles in our brief that discuss all of these things, the trickle-down effect to people's families, ability to lose a driver's license. There are many, many things that can harm someone from having these unpaid assessments. The real-life consequences for indigent families make this such an important issue. We ask this Court to find that these issues can be remedied as second-pronged plain error. Counsel, let me ask you this. What if Mr. Harvey had walked into court and said, yes, I'm guilty. I don't want a lawyer. Pleads after the proper admonishments. These fees are assessed, and they're gone wild. There's errors. It never comes to light. Your Honor, that probably happens. And there's an even larger group of people going to court on misdemeanors and never have counsel and plead. There's no basis. Anybody to look at these. Isn't it a larger issue? Your Honor, I completely agree that this is a larger issue, and that's why it's so important that the legislature act and resolve some of these problems. The schedule that they have proposed, the task force has proposed, and I was looking for the number, and I didn't find it. I think it's House Bill 2591. There's a five and a nine in it. I double-checked yesterday online to see if there's been any action. It died in committee last April. There's been no further action on it. We need this legislature to act because, yes, we can identify and try to assist our clients on appeal for people who do exercise their right to an appeal. But as Your Honor was saying, there are so many people who probably have no idea about this. And part of that comes from the bigger problem with the legislature needing to clean up and clarify some of these complicated statutes so that everyone involved in the system is treated fairly and not paying unauthorized assessments, to which the government has no right to take. Are there no further questions? Thank you. Thank you. Case number 122325, People v. Harvey, will be taken under advisement as agenda number six.